IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00717-PAB-KLM

DAVID JESUALE,

      Plaintiff,

v.

ORACLE AMERICA, INC.,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on a Motion for Summary Judgment [Docket No. 25] filed by defendant Oracle America, Inc.

**I. BACKGROUND**[1]

      Plaintiff David Jesuale was born on November 28, 1950. Docket No. 38 at 6. Mr. Jesuale's resume indicates that he has over fifteen years of information technology sales and service experience and has held various management positions in the IT field from 1981 until the present day. Docket No. 25-13 at 9. Mr. Jesuale began working for Storage Technology Corporation ("Storage Tek") in 2002 as a director of partner management. Docket No. 25-13 at 1. At some point during his employment, Mr. Jesuale filed a charge of age discrimination against Storage Tek. Docket No. 29-2 at 10, p. 85:19-22; Docket No. 25 at 2. In June 2005, Storage Tek was acquired by Sun Microsystems Incorporated ("Sun"). Mr. Jesuale continued in the same position until

_____

[1]The following facts are undisputed unless otherwise indicated.

2007, Docket No. 25-13, when he says he was demoted to Senior Manager.  Docket No. 29-2 at 4, pp. 33:20-34:12.

In February 2010, defendant acquired Sun and Mr. Jesuale was terminated. Docket No. 25 at 4, ¶ 1.  Mr. Jesuale's last day was February 14, 2010.  Docket No. 38 at 6.  He was 59 years old at the time of his termination.  The parties dispute whether Sun or defendant made the decision to terminate Mr. Jesuale.  Mr. Jesuale claims that defendant made the ultimate decision to terminate him.  Docket No. 29-1 at 2, ¶ 3. Defendant claims that Mr. Jesuale was terminated by Sun as part of a reduction in force.  Docket No. 25 at 4, ¶ 1.  Before his last day at Sun, Mr. Jesuale sent a letter to Sun complaining of discrimination and claims that the file concerning his complaint was transferred to defendant during defendant's acquisition of Sun.  Docket No. 29-1 at 3, ¶ 5.  Defendant indicates that Mr. Jesuale's complaint was resolved through a settlement whereby Mr. Jesuale released Sun from all claims arising from his termination.  Docket No. 25 at 1-2.[2]

After his termination from Sun, Mr. Jesuale began seeking new employment.  He applied for approximately 100 positions with twenty-four companies, including applying for twenty-five positions with defendant.  Docket No. 25 at 4, ¶ 2.  Each application to defendant consisted of a resume and cover letter.  The cover letter contained the statement: "I look forward to hearing from you and I hope my prior charge of discrimination does not hurt my chances of getting an interview."  *Id.* at 4, ¶ 3; *see*

---

[2]Mr. Jesuale's Charge of Discrimiantion filed with the Equal Employment Opportunity Commission indicates that his termination from Sun is not the basis for the instant discrimination claim.  *See* Docket No. 25-4.

Docket No. 25-3.  According to Mr. Jesuale, this statement was in reference to the charge of discrimination he filed against Storage Tek.  Docket No. 25-1 at 12, p. 84:8-22.

Mr. Jesuale applied for positions through defendant's iRecruitment website. Docket No. 25 at 5, ¶ 8.  The website allows applicants to create a profile, search for open positions, and submit a resume and/or cover letter for open positions.  *Id.* at 5, 6, ¶¶ 9, 13.  Each posting/position is assigned an "IRC" number[3] for record keeping purposes.  *Id.* at 6, ¶ 10.  When an applicant views a posting on the iRecruitment website, the applicant has access to the position description, the position's preferred and/or required qualifications, and the position's geographical location.  *Id.* at 6, ¶ 11. An applicant can apply for a position listed on the website regardless of whether the applicant's qualifications are a match.  *Id.*  Upon completing an application, the iRecruitment system automatically sends the applicant a confirmation email indicating that defendant will be in touch with the applicant "as appropriate."  *Id.* at 6, ¶ 13. Recruiters and hiring managers update the system throughout the hiring process and, as a result, applicants can check the status of their applications at any time.  *Id.* at 7, ¶ 17.

The iRecruitment system allows defendant's recruiters or hiring managers to review each applicant's submissions.  *Id.* at 6, ¶ 15.  Defendant does not always contact all applicants for a position.  *Id.*  The iRecruitment system permits recruiters and

---

[3]According to defendant, each job posing in the iRecruitment system is assigned an "IRC" number to enable recruiters to track applicants and update the status of candidates' applications.  Docket No. 25-5.  The postings are publically available via the iRecruitment website.  *Id.*

hiring managers to post openings before obtaining official approval for an additional

position.  As a result, some posted positions close without a hire or the selection of a

particular candidate.  *Id.* at 7, ¶ 18.  The hiring manager or recruiter is able to screen

applications by additional un-posted preferences and qualifications.  *Id.* at 6, ¶ 12.

Mr. Jesuale claims that defendant must have "blacklisted" him.  Docket No. 29 at

19.  Defendant responds that the iRecruitment system does not allow a particular

applicant to be "blacklisted" or categorized as non-hireable.  *Id.* at 6, ¶ 14.[4]  Defendant

asserts that recruiters and hiring managers do not have access to the applicants' ages

through the iRecruitment system.  *Id.* at 7, ¶ 16; Docket No. 25-5 at 2, ¶ 10.  Mr.

Jesuale does not dispute this assertion, but claims that a recruiter viewing his resume,

work experience, and educational background could easily determine his age.  Docket

No. 29 at 8, ¶ 16.  Defendant claims its human resources database does not include

personnel records of employees who only worked for a company that defendant

acquired.  *Id.*  As a result, recruiters and hiring managers do not have access to

personnel records of employees or former employees of companies that defendant

acquired.  *Id.*[5]

---

[4]Mr. Jesuale does not directly dispute this fact, but argues that defendant's alleged discrimination was a result of human action.  Docket No. 29 at 7, ¶ 14.

[5]Mr. Jesuale disputes this fact, asserting that, prior to defendant's acquisition of Sun, Sun employment data was converted and moved to defendant.  Docket No. 29-1 at 5, ¶ 12.  Mr. Jesuale does not clarify how he acquired this knowledge and, when asked whether defendant's recruiters would have access to his Storage Tek or Sun employment files, Mr. Jesuale responded "I would assume that they did."  Docket No. 25-1 at 13, p. 86:3-15.  When pressed further for specific facts, Mr. Jesuale responded, "Other than I was an employee of a company they acquired and all the records were retained.  It would make sense that they would have those – that information."  *Id.*

Mr. Jesuale has listed the twenty-five applications he submitted to defendant on a spreadsheet, Docket No. 25-8; Docket No. 29-3, indicating each position's title, IRC Number, the date he applied for each position, and the day his candidacy was ultimately closed. Docket No. 32-1 at 2-3, pp. 64:10-66:7.  Mr. Jesuale indicates that he created the spreadsheet to record the applications he submitted to defendant, although it is unclear from the record if he kept the spreadsheet as a contemporaneous log or if he prepared it as part of this litigation.  *Id.*  According to the spreadsheet, Mr. Jesuale applied for seventeen positions between March 31, 2010 and September 22, 2010. Docket No. 29-3 at 2-12.[6]  On November 30, 2010, Mr. Jesuale began employment as Vice President of Channel Sales with IT Express Services, Incorporated, a position he acquired through a personal contact.  Docket No. 25-1 at 3, pp. 14:13-15:11.  On August 8, 2011, Mr. Jesuale filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendant.  Docket No. 25-4. Mr. Jesuale alleged that defendant unlawfully failed to hire him because he previously complained about discrimination and because of his age.  *Id.*  Mr. Jesuale also indicated his belief that the defendant's discriminatory failure to hire was "continuing." *Id.* at 1.  Mr. Jesuale did not amend the charge or subsequently file an additional charge.  Docket No. 25 at 5, ¶ 7; Docket No. 29 at 4, ¶ 7.  After obtaining a new job and filing his EEOC charge, Mr. Jesuale applied for eight positions with defendant between

---

[6]The spreadsheet lists IRC 1368004 twice.  Mr. Jesuale indicates that he applied for this position only once through a different website, but received a confirmation regarding his application from defendant.  Docket No. 25-2 at 16, p. 191:5-21.  Thus, the Court will consider defendant's application for IRC 1368004 as an application for a single position.  See Docket No. 29-3 at 6.

August 17, 2011 and February 29, 2012.  Docket No. 29-3 at 12-16.

For eleven positions, the spreadsheet indicates Mr. Jesuale recorded that his candidacy closed on various dates between April 21, 2010 and October 8, 2010. Docket No. 29-3.  For eleven positions, Mr. Jesuale recorded that his candidacy closed on various dates between October 25, 2011 and March 11, 2012.  *Id.*  Two applications are listed as active.  *Id.*  Mr. Jesuale did not record his candidacy closed with respect to IRC 1597653.  *Id.* at 14.

On March 22, 2012, Mr. Jesuale filed this action.  He brings claims for discrimination and retaliation against defendant pursuant to the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.*  Defendant moves for summary judgment on all claims.  Docket No. 25.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

6

1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

III.  ANALYSIS

### A.  Administrative Exhaustion

A plaintiff bringing a claim under the ADEA must exhaust his or her administrative remedies for each alleged individual discriminatory act.  *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).  The two purposes behind the exhaustion requirement are "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, [effectuating the] goal of securing voluntary compliance."  *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003); *see also Shikles*, 426 F.3d at 1313 ("Congress created the EEOC . . . to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit" (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)).  Thus, in the Tenth Circuit, "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA."  *Id.* (applying Title VII exhaustion requirements to suit brought under the ADEA); *see also Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).  To determine whether a plaintiff has exhausted his or her administrative remedies, courts identify the scope of the allegations raised in a plaintiff's charge of discrimination because a "plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Jones*, 502 F.3d at 1186; *see also MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  As applicable to this

8

matter, a plaintiff must file a charge of discrimination with the EEOC "within 300 days after the alleged unlawful practice occurred."  29 U.S.C. § 626(d)(1)(B).  If the alleged unlawful incident occurs outside the 300-day window, a plaintiff will "lose the ability to recover for it."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

Mr. Jesuale filed a charge with the EEOC on August 8, 2011.  Docket No. 25-4 at 2.  As noted above, Mr. Jesuale did not subsequently amend his original charge or file an additional charge.  Docket No. 25 at 5, ¶ 7; Docket No. 29 at 4, ¶ 7.  Accordingly, Mr. Jesuale's EEOC charge encompasses only those alleged incidents of discrimination occurring between October 12, 2010 and August 8, 2011.  *See Morgan*, 536 U.S. at 110.

Mr. Jesuale admits that some alleged incidents of discrimination occurred prior to October 12, 2010, but argues that he had no basis to believe he was being discriminated against until August 2011 when "the pattern developed."  Docket No. 29 at 12.  "The EEOC charging period is triggered when a discrete unlawful practice takes place."  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628 (2007), *superceded by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (Jan. 29, 2009) (amending 42 U.S.C. § 2000e-5(e)).  Each refusal to hire is a temporally discrete act.  *Id.* at 638; *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003) ("Each discrete refusal to hire . . . starts a new clock for filing a charge alleging that act." (internal quotations omitted)).  The EEOC charging period begins to run when the discriminatory decision is "'made and communicated'" to the plaintiff.  *Ledbetter*, 550 U.S. at 629 (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).  Under the

ADEA, a cause of action accrues "on the date the employee is notified of an adverse employment decision." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994). Generally, this occurs when a decision is announced by the employer. *Id.*

In *Davidson*, the plaintiff argued that, although defendant first refused to hire plaintiff prior to the charging period, plaintiff did not learn of a discriminatory motivation until the defendant again refused to hire him within the charging period. 337 F.3d at 1187. The Tenth Circuit rejected plaintiff's argument, holding that "'notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue[, rather,] it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations.'" *Id.* (quoting *Hulsey*, 43 F.3d at 558-559). Accordingly, plaintiff's "claim began to accrue . . . when [defendant] communicated to him that his first job application was rejected." *Id.*

Because a refusal to hire is a discrete discriminatory act, the Court cannot, as Mr. Jesuale urges, apply the continuing violation doctrine. *See Morgan*, 536 U.S. at 113 (rejecting continuing violation doctrine in retaliation and disparate treatment cases). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*; *see also Davidson*, 337 F.3d at 1185 ("plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period"). Even when, as here, plaintiff alleges that discrete refusals to hire were undertaken pursuant to a discriminatory hiring policy or "blacklisting," Docket No. 29 at 22-23,

10

plaintiff is barred from bringing claims based on acts occurring outside the charging period. *Davidson*, 337 F.3d at 1186.  Knowledge of a discriminatory motivation is not the event that triggers the charging period; rather, a claim begins to accrue upon knowledge of the adverse employment action.  *See id.*

 To the extent that Mr. Jesuale's "blacklisting" argument can be characterized as a request for equitable tolling, Mr. Jesuale has produced insufficient facts to justify tolling the statute of limitations.  Under the ADEA, equitable tolling is only appropriate if circumstances "'rise to the level of active deception where a plaintiff has been lulled into inaction by [his] past employer . . . .'"  *Hulsey*, 43 F.3d at 557 (quoting *Gray v. Phillips Petroleum*, 858 F.2d 610, 615 (10th Cir. 1988)).  Tolling can occur if a failure to timely file results from an employer's deliberate design or actions that "the employer should unmistakably have understood would cause the employee to delay filing his charge."  *Hulsey*, 43 F.3d at 557 (internal quotations omitted).  However, even assuming that Mr. Jesuale provides sufficient factual support to sustain his "black listing" claim, nothing in the record indicates that defendant intended or took steps to frustrate the filing of an EEOC charge.  Thus, the Court finds no basis upon which to toll the statute of limitations.

 For events occurring after plaintiff filed his EEOC claim on August 8, 2011, Mr. Jesuale argues that, because his charge indicated that the alleged discrimination "will continue" [Docket No. 25-4 at 1], the EEOC would naturally have investigated future alleged incidents of discrimination.  Docket No. 29 at 22.  However, the continuing violation doctrine does not apply to discrete acts occurring after an EEOC charge is

filed. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (rejecting continuing violation theory for incidents occurring after the filing of an EEOC charge). Even when an EEOC charge alleges a continuing refusal to hire, the Tenth Circuit, in an unpublished decision, reaffirmed that the continuing violation doctrine does not apply. In *Eke v. CaridianBCT, Inc.*, 490 F. App'x 156, 162 (10th Cir. 2012), the plaintiff's EEOC charge stated, "I also believe that I will be foreclosed from applying for future job openings." Nevertheless, the court held that any subsequent refusals to hire were time-barred for failure to file a new charge. *Id.*; *see also Freppon v. City of Chandler*, 528 F. App'x 892, 899 (10th Cir. 2013) (unpublished) (holding that failure to file separate administrative charge after wrongful termination was a failure to exhaust administrative remedies); *McDonald-Cuba v. Santa Fe Protective Servs., Inc.* 644 F.3d 1096, 1101 (10th Cir. 2011) (holding that exhaustion requirement applies to alleged retaliation occurring after the commencement of judicial proceedings). For the foregoing reasons, Mr. Jesuale's claims are time-barred to the extent he first learned of each refusal to hire outside of the 300-day charging period.

Given that defendant has raised the issue of administrative exhaustion, the burden shifts to plaintiff to designate specific facts indicating there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. Mr. Jesuale is not unaware of this burden, as evidenced by his argument that the continuing violation doctrine should apply to his claims. *See* Docket No. 29 at 12. Nevertheless, Mr. Jesuale entirely fails to present evidence of when each discrete refusal to hire occurred. Mr. Jesuale vaguely refers to over 100 pages of internal iRecruitment records, but the records are unhelpful on this

issue because Mr. Jesuale presents no testimony that those records reflect the dates upon which he was first notified that he would not be hired for each position. *See generally* Docket No. 29-5; Docket No. 29-6; Docket No. 29-7; Docket No. 29-8; Docket No. 29-9.

In his response brief, Mr. Jesuale sets forth, without citation to the record, close dates with respect to seven positions. Docket No. 29 at 13. Although the context or source of these dates is not apparent from Mr. Jesuale's brief, a review of the record indicates that these are dates that defendant's internal iRecruitment system listed each of the seven positions closed. *See, e.g.*, Docket No. 29-8 at 5, 20. For example, with respect to IRC 1387547, defendant's internal iRecruitment system lists the vacancy name as "IRC 1387547," the start date as "20-Sep-2010," and the end date as "30-Nov-2010." Docket No. 29-8 at 20. However, listing dates, without providing any context or explanation for such dates, is insufficient to meet Mr. Jesuale's burden. The date upon which an open position was internally closed or the date upon which defendant stopped accepting new applications is not relevant unless Mr. Jesuale presents evidence that these are also the dates that he learned he would not be hired. Mr. Jesuale makes no such showing.[7] *See Davidson*, 337 F.3d at 1187 ("knowledge of the adverse employment decision . . . triggers the running of the statute of limitations").

---

[7]Moreover, even if Mr. Jesuale were to present such evidence, only the internal closing dates for IRC 1368004 (11/16/2010), IRC 1380830 (11/30/2010), and IRC 1387547 (11/30/2010) fall within the statute of limitations. *See* Docket No. 29 at 13. Internal closing dates for the remaining four positions mentioned in Mr. Jesuale's response brief fall outside the statute of limitations. *See id.*

Defendant provides yet a third set of closing dates for IRC 1387547 and IRC 1368004.  Linda Zhao, Senior Director, Apps IT, avers that, with respect to both positions, Mr. Jesuale's candidacy was closed on October 25, 2010.  Docket No. 32-3 at 2-3, ¶¶ 8, 9.  However, the discrepancy between October 25, 2010 and the November dates that Mr. Jesuale cites does not create a genuine dispute of material fact because Mr. Jesuale presents no evidence that the date upon which defendant considered his application closed is the same date upon which defendant communicated that information to Mr. Jesuale or the date upon which Mr. Jesuale *actually knew* he would not be hired.  *See Davidson*, 337 F.3d at 1187.[8]

As noted earlier, the record is unclear as to the circumstances under which Mr. Jesuale created the spreadsheet.  The spreadsheet contains a total of seven columns. Docket No. 29-3.  In the column labeled "Oracle Job Status," Mr. Jesuale lists either the date his candidacy was closed or, in two instances, that his application is active.  *See id.* at 16.  Mr. Jesuale states that he recorded all applications to defendant in the spreadsheet, but does not indicate if the closing dates he recorded are based on his personal knowledge or if the closing dates were compiled from documents that

_____

[8]Mr. Jesuale does not argue that his failure to provide evidence of when he knew or should have known of each refusal to hire is a result of defendant's failure to communicate its decision.  Although Mr. Jesuale argues that defendant failed to send him a letter explaining its decision for each of the twenty-five positions at issue, this argument is irrelevant.  Docket No. 29 at 19.  The Court is aware of no case holding that the charging period does not begin to run until an employer sends each applicant a rejection letter.  It is undisputed that applicants for positions at Oracle can review the status of their applications on the iRecruitment website.  *See* Docket No. 25-5 at 2, ¶ 11.  Mr. Jesuale does not argue or provide any evidence to indicate that defendant failed to communicate each refusal to hire through the iRecruitment website.  Thus, the Court finds no basis to relax the administrative exhaustion requirement.

defendant produced during this litigation.  *See* Docket No. 32-1 at 2-3, pp. 64:10-66:7.
If the Court assumes that the close dates listed in the spreadsheet reflect Mr. Jesuale's
personal knowledge of the dates upon which he first learned that defendant would not
hire him, none of the close dates listed in the spreadsheet fall within the 300-day
charging period.  For eleven positions, Mr. Jesuale's spreadsheet lists his candidacy
closed on various dates before October 11, 2010.  Docket No. 29-3.[9]  For eleven
positions, Mr. Jesuale's spreadsheet lists his candidacy closed on various dates after
August 9, 2011.  *Id.*[10]  With respect to IRC 1352411 and IRC 1697636, which the
spreadsheet lists as active applications, there has been no refusal to hire within the
charging period.[11]  The spreadsheet does not indicate a closing date for IRC 1597653;
however, Mr. Jesuale did not apply for this position until August 25, 2011 – after he filed
his EEOC charge.  Thus, based on the close dates that he included in the spreadsheet,
none of Mr. Jesuale's claims began to accrue within the charging period.

Alternatively, if the Court assumes that the close dates listed on the spreadsheet

------

[9]The eleven positions, and their corresponding closed dates as listed in the
spreadsheet, are: IRC 1354642 (10/8/10), IRC 1354594 (7/7/10), IRC 1284771
(9/15/10), IRC 1322254 (4/21/10), 1322896 (5/19/10), IRC 1359837 (7/21/10), IRC
1379598 (10/8/10), IRC 1378034 (9/15/10), IRC 1378057 (9/15/10), IRC 1381202
(10/8/10), IRC 1380830 (10/8/10).  Docket No. 29-3.

[10]The eleven positions, and their corresponding closed dates as listed in the
spreadsheet, are: IRC 1354445 (10/25/11), IRC 1322425 (10/25/11), IRC 1368004
(2/5/12 or 10/25/11), IRC 1381748 (2/5/12), IRC 1387547 (10/25/11), IRC 1599550
(2/5/12), IRC 1591684 (10/25/11), IRC 1629701 (2/5/12), IRC 1625725 (2/5/12), IRC
1709711 (2/29/12), IRC 1718424 (3/11/12).  Docket No. 29-3.

[11]Defendant indicates that IRC 1352411 is not an active application, but was
closed on June 20, 2010.  Docket No. 25 at 8 n.5.  In either case, plaintiff has failed to
exhaust administrative remedies with respect to this position.

reflect information that plaintiff acquired through discovery, as opposed to personal knowledge by Mr. Jesuale, the result is no different.  Mr. Jesuale has the obligation on summary judgment to bring forth evidence that shows, for each of the applications he bases his claims upon, that he learned of the adverse employment action within the 300-day charging period.  *See Davidson*, 337 F.3d at 1187.  As previously discussed, plaintiff fails to do that.  It is not incumbent on the Court to assume what plaintiff did or did not know.  In short, plaintiff submits no evidence that creates a genuine issue of material fact that he filed his claims within the charging period.

Accordingly, the Court finds that Mr. Jesuale has failed present sufficient evidence for a reasonable juror to find that any of the adverse employment actions upon which Mr. Jesuale bases his claims occurred within the 300-day charging period. Thus, the Court finds that Mr. Jesuale has failed to exhaust his administrative remedies with respect to all twenty-five positions underlying his claims against defendant.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 25] is **GRANTED**.  It is further

**ORDERED** that the Trial Preparation Conference scheduled for January 2, 2014 and the trial set for January 14, 2014 are **VACATED**.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have its costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed in its entirety.

DATED December 30, 2013.

BY THE COURT:

s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
United States District Judge